UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RAMON SILVA,<br><br>                    Plaintiff,<br><br>    v.<br><br>TROY BACON, *et al*.,<br><br>                    Defendants. | Case No. C19-619-RAJ-MLP<br><br>REPORT AND RECOMMENDATION |

### I.    INTRODUCTION AND SUMMARY CONCLUSION

Plaintiff Ramon Silva is currently confined in the King County Correctional Facility in Seattle, Washington. He brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his First and Fourteenth Amendment rights to free exercise of religion and to equal protection, and pursuant to the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq*. This matter comes before the Court at the present time on Plaintiff's motions for preliminary injunctive relief. (Dkt. ## 7, 9.) Defendants oppose Plaintiff's motions. (Dkt. ## 16, 26.) Also pending before the Court is Plaintiff's motion for an order directing that he be transported to this Court for a hearing on his motions for preliminary injunction. (Dkt. # 32.)

REPORT AND RECOMMENDATION - 1

This Court, having reviewed Plaintiff's pleadings, his motions for injunctive relief, and the balance of the record, concludes that Plaintiff's motions for preliminary injunction should be denied. The Court further concludes that Plaintiff's motion for an order of transport should be denied as moot.

## II. DISCUSSION

### A. Background

Plaintiff alleges in his pleadings that Defendants are violating his First and Fourteenth Amendment rights, and RLUIPA, by forcing him to remove his religiously mandated head covering, denying him a diet which satisfies the requirements of his religion, denying him items required by his religion for use during prayer (including scented oils, music, and marijuana), and interfering with his right to petition for redress of grievances.[1] (*See* Dkt. ## 4, 8.) Plaintiff identifies his religion as "The Keepers of the Light," a religion which he created while he was in Washington Department of Corrections custody in December 2018. (*See* Dkt. # 4 at 6; Dkt. # 27 (Clarke Decl.), Ex. D.)

Plaintiff submitted with his original complaint a copy of his religion's sacred/holy book which he refers to as "The Guide Light." (*See* Dkt. # 4 at 7.) That document, which was written by Plaintiff, details the tenets and requirements of his religion. (*See* Dkt. # 4-1.) Among the requirements identified therein is that "all Keepers will cover their hair with a white clothe [sic]

---

[1] Plaintiff has filed an original complaint and an amended complaint in this action. In his amended complaint, which is the operative pleading, Plaintiff incorporates by reference the claims asserted in his original complaint and he then sets forth two "amended claims." For purposes of ruling on Plaintiff's motions for preliminary injunctive relief, the Court has considered the claims set forth in both of Plaintiff's pleadings. However, Plaintiff's attempt to incorporate by reference his original claims into his amended complaint will not suffice going forward. Local Civil Rule ("LCR") 15 clearly states that an amended pleading "must not incorporate by reference any part of the preceding pleading, including exhibits." If Plaintiff wishes to proceed with respect to all claims asserted in both pleadings, he must file a single pleading which sets forth all of his intended claims against all intended defendants. Absent such a pleading, the Court will deem the two "amended claims" fully set forth in Plaintiff's amended complaint as the only viable claims in this action.

REPORT AND RECOMMENDATION - 2

in a style of their choosing careful to cover the entire brain." (*Id*. at 13.) The document also sets forth the requirements for "The Keeper Diet," including the specific times during the day when meals must be consumed, the rituals which must be observed while preparing and consuming meals, which foods must be consumed or avoided, and acceptable sources from which food may be acquired. (*See id* at 18-23.)

Plaintiff, by way of his motions for preliminary injunctive relief, seeks to enjoin Defendants from denying his religiously required diet and his religiously required head covering. (*See* Dkt. ## 7, 9.) Defendants oppose Plaintiff's requests for injunctive relief. (*See* Dkt. ## 16, 26.)

**B.     Applicable Standards**

    1.     *Preliminary Injunction*

A preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoted source omitted; emphasis added by Supreme Court). *See also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). To obtain a preliminary injunction, a plaintiff must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that a balance of the equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20.

Under the "sliding scale" approach to preliminary injunctions used in the Ninth Circuit, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Thus, "'serious questions going to the merits' and a balance of

REPORT AND RECOMMENDATION - 3

hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id*. at 1135.

The Court must also take into account the nature of the injunction being requested. A prohibitory injunction preserves the status quo while litigation is pending, and a mandatory injunction provides preliminary relief well beyond maintaining the status quo. *Stanley v. University of Southern California*, 13 F.3d 1313, 1320 (9th Cir. 1994). Mandatory preliminary injunctions are disfavored, and "the district court should deny such relief 'unless the facts and law clearly favor the moving party.'" *Id*. (quoting *Martinez v. Matthews*, 544 F.2d 1233, 1243 (5th Cir. 1976)).

    2.    First Amendment

The Supreme Court has made clear that inmates retain the protections afforded by the First Amendment, "including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987). In order to merit protection under the Free Exercise Clause, a prisoner's religious claim must satisfy two criteria: (1) the prisoner's proffered belief must be sincerely held; and (2) the claim must be rooted in religious belief, not in purely secular philosophical concerns. *See Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008); *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994). In addition, to establish a free exercise violation, a prisoner must show that the interference with the practice of his religion was more than an inconvenience, the prisoner must demonstrate that the burden was substantial. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (citing *Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir. 1987)).

REPORT AND RECOMMENDATION - 4

3. **RLUIPA**

RLUIPA provides in relevant part that "[n]o [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government shows the burden furthers "a compelling governmental interest" and is the "least restrictive means" of furthering that interest. 42 U.S.C. § 2000cc-1(a); *see also*, *Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005). RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *see also*, *Cutter*, 544 U.S. at 715.[2]

A plaintiff bears the initial burden under RLUIPA of demonstrating that the challenged regulation imposes a substantial burden on the exercise of his religious beliefs. *See Warsoldier v. Woodford*, 418 F.3d 989, 994-995 (9th Cir. 2005). "[A] burden is substantial under RLUIPA when the state denied [an important benefit] because of conduct mandated by religious belief, thereby putting substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Shakur*, 514 F.3d at 888 (internal quotes omitted). Once a plaintiff establishes that the challenged state action burdened his religious exercise, the government bears the burden of establishing that the regulation serves a compelling government interest and is the least restrictive means of achieving that interest. *Id*. at 889.

The Supreme Court has acknowledged that RLUIPA does not "elevate accommodation of religious observances over an institution's need to maintain order and safety" and that "maintain[ing] good order, security and discipline, consistent with consideration of costs and limited resources," is a compelling government interest. *Cutter*, 544 U.S. at 722.

---

[2] The Supreme Court has explained that though RLUIPA bars inquiry into whether a particular belief or practice is central to a prisoner's religion, it "does not preclude inquiry into the sincerity of a prisoner's professed religiosity." *Cutter*, 544 U.S. at 725 n.13.

REPORT AND RECOMMENDATION - 5

### C.     Analysis

The first question for the Court to consider is whether Plaintiff has requested a mandatory or a prohibitory injunction. Plaintiff complains in this case that he has been provided neither the diet nor the head covering required by his religion, and he seeks an injunction compelling Defendants to provide both. As Plaintiff is seeking to alter rather than maintain the status quo, he is seeking a mandatory injunction and his request is therefore subject to a higher degree of scrutiny. Plaintiff has not established any entitlement to a mandatory injunction.

#### 1.     *Religious Diet*

The dietary requirements of Plaintiff's professed religion, as set forth in The Guide Light, are quite expansive. The nature of some of those requirements raises questions as to whether they are actually rooted in religious belief, or were instead designed by Plaintiff to simply enhance his institutional dining experience. For example, The Guide Light requires that meals be "hot, moist and flavorful" (dkt. # 4-1 at 19), that meat "on the bone" be eaten with three meals a day and that it be seasoned with "salt, pepper and spices" (*id*. at 19-20), that fresh chicken eggs be consumed with the first meal of the day and "never in the style as the day before" (*id*. at 20), that food be organically grown, that each meal be eaten with the "sacred plant," a/k/a, marijuana (*id*.), and that at every meal adherents "fill themselves until they are content" (*id*. at 21). It does not escape the Court's attention that these various requirements address many of the common complaints made by inmates generally about institutional cuisine.

The nature of some of the other requirements suggests that there is a compelling government interest in restricting Plaintiff's religious exercise, at least as it pertains to his diet. For example, The Guide Light requires that all plants and animals be blessed by "Keepers" prior to cooking (*id*. at 19), that all cooking be done by "Keepers" (*id*.), and that all food products be

REPORT AND RECOMMENDATION - 6

obtained from "Keepers" (*id.*). As the record makes clear that the religion at issue was created by Plaintiff while he was in custody, and that the religion has been in existence for less than a year, it seems unlikely that there are sufficient numbers of adherents to meet these requirements. In addition, there can be no doubt that there is a compelling government interest in restricting the use of marijuana in the KCCF.

Plaintiff fails to make a sufficient showing in his motions that he is likely to succeed on the merits of his First Amendment and RLUIPA claims arising out of alleged restrictions on his religious diet. Plaintiff also fails to demonstrate that the balance of hardships tips sharply towards plaintiff given the substantial costs potentially associated with Plaintiff's dietary demands. In sum, Plaintiff has not established any entitlement to a mandatory injunction relating to his religious diet.

    2.    *Religious Head Covering*

Plaintiff's request for injunctive relief concerning a religious head covering likewise fails. Plaintiff alleges that the day after he was booked into the KCCF, one of the Defendants ordered Plaintiff to take off his religious head covering. (*See* Dkt. # 4 at 6.) The KCCF has a policy governing religious head coverings which provides that such coverings are to be supplied by the facility. (Dkt. # 27 (Clarke Decl.), Ex. C at 4.) The policy also explains the process by which inmates may request a religious head covering. (*See id.*) It appears from the record before the Court that the heading covering Plaintiff was originally directed to remove was not supplied by the facility, and that Plaintiff did not make use of the designated process for obtaining an approved religious head covering.

Despite Plaintiff's apparent failure to follow the designated process, Plaintiff did at some point have a conversation with the facility chaplain who offered to provide Plaintiff with a

REPORT AND RECOMMENDATION - 7

Muslim head covering, or "kufi." (*See* Dkt. # 30 at 3.) Plaintiff declined the offer of the kufi, deeming it inconsistent with his religious mandate. (*See id.*) The record suggest that the issue concerning Plaintiff's head covering is still under consideration by jail officials, though it has now been several months since the issue arose without any apparent resolution. (*See* Dkt. # 31, Ex. A.)

At this juncture, Plaintiff has established only that Defendants refused to allow him to wear an unauthorized religious head covering, and that he deemed an authorized alternative unacceptable. These facts are insufficient to establish any violation of Plaintiff's rights under either the First Amendment or RLUIPA. Moreover, it appears that Plaintiff may still make use of the designated institutional process to request a religious head covering. Should Plaintiff take advantage of this process, and should Defendants fail to timely, and in good faith, respond to any proper request for a religious head covering, Plaintiff may renew his request for injunctive relief.

### III.   CONCLUSION

Based on the foregoing, this Court recommends that Plaintiff's motions for preliminary injunction be denied. This Court further recommends that Plaintiff's motion for an order of transport be denied as moot. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **October 11, 2019**. Objections, and any response, shall not exceed twelve pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no

REPORT AND RECOMMENDATION - 8

timely objections are filed, the matter will be ready for consideration by the District Judge on the date that objections were due.

DATED this 19th day of September, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION - 9